NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221042-U

NOS. 4-22-1042, 4-22-1045, 4-22-1047, 4-22-1051

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 11, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| RACHEL NICOLE HAMEL, | ) | Nos. 20CF844 |
| Defendant-Appellant. | ) | 20CF865 |
| | ) | 21CF799 |
| | ) | 21CF929 |
| | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court held that the trial court did not abuse its discretion in sentencing defendant to an aggregate 12-year prison sentence following her guilty pleas.

¶ 2        After defendant, Rachel Nicole Hamel, pleaded guilty to (1) one count of delivery of methamphetamine (720 ILCS 646/55(a)(1) (West 2020)) in McLean County case No. 20-CF-865, (2) one count of retail theft (720 ILCS 5/16-25(a)(1) (West 2020)) in McLean County case No. 20-CF-844, (3) one count of delivery of methamphetamine in McLean County case No. 21-CF-799, and (4) one count of delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2020)) in McLean County case No. 21-CF-929, defendant was sentenced to an aggregate of 12 years in prison. The trial court denied defendant's motions to reconsider her prison sentence.

Defendant appeals, arguing that the court abused its discretion in sentencing her to 12 years in prison. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4            In 2021, the State charged defendant with the above offenses as well as the following additional offenses in McLean County case No. 20-CF-844: (1) one count of delivery of methamphetamine, (2) one count of possession of methamphetamine (720 ILCS 646/60(a) (West 2020)), and (3) one count of possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2020)). In March 2021, defendant pleaded guilty to one count of retail theft in case No. 20-CF-844 and one count of delivery of methamphetamine in case No. 20-CF-865. In exchange for defendant's guilty pleas, the prosecutor agreed to nolle pros the remaining charges against defendant. The plea included no recommendations regarding sentencing. At the guilty plea hearing, the prosecutor gave a factual basis for the charges, asserting that, in July 2020, defendant failed to scan $132 in merchandise at a Walmart in Normal, Illinois, and that in August 2020, defendant sold 0.9 grams of methamphetamine to a confidential source for $120. The trial court informed defendant of the possible range of penalties on each of the charges and accepted defendant's guilty pleas, finding them to be made knowingly and voluntarily. The court then set the case for a sentencing date and released defendant from jail pending the sentencing hearing.

¶ 5            Prior to defendant's sentencing in case Nos. 20-CF-844 and 20-CF-865, defendant was charged with additional offenses. In case No. 21-CF-799, defendant was charged with delivery of methamphetamine, and in case No. 21-CF-929, defendant was charged with delivery of a controlled substance. In September 2021, defendant pleaded guilty to those new offenses pursuant to an open plea, and the plea agreement indicated that the sentences would be served consecutive to the sentences received in the prior cases. At the plea hearing, the trial court informed

defendant of the possible sentencing ranges for the offenses and the consequences of pleading guilty. As a factual basis, the State explained that on July 20, 2021, defendant sold a police informant Xanax for $80 and that on June 28, 2021, a confidential source purchased methamphetamine from defendant for $100. The court accepted defendant's guilty pleas as to these offenses, finding them to be knowingly and voluntarily made.

¶ 6        A presentence investigation report (PSI) indicated that defendant had an extensive criminal record dating back to 1997. Specifically, defendant's record included an ordinance violation, 57 traffic violations, 4 misdemeanors, and 5 felonies. The PSI further indicated that defendant was on felony probation in Macon County and felony bond in Tazewell and Peoria Counties when the offenses in case Nos. 20-CF-844 and 20-CF-865 were committed. Similarly, defendant was on felony bond in Tazewell, Peoria, and McLean Counties when the offenses in case Nos. 21-CF-799 and 21-CF-929 were committed. The PSI explained that during defendant's incarceration while awaiting sentencing, she participated in Alcoholics Anonymous, "Path to Healing, Celebrate Recovery, Job Partnership, Church, [and] Bible Study." Additionally, defendant was waiting to be screened for eligibility for Labyrinth House and was a "pod worker."

¶ 7        The PSI also detailed defendant's "very traumatic childhood." On one occasion, defendant's mother left defendant with a man she met three days prior, and the man molested defendant. Between the ages of four and six, defendant was in foster homes due to her mother's substance abuse issues. The PSI indicated that defendant and her siblings had been chained in a closet. From ages six to fourteen, defendant was in the care of her maternal grandmother, and defendant was molested by her grandmother's husband. When defendant was 14, her grandmother dropped her off with child protective services because her grandmother "could no longer care for her." When defendant was 16, she was raped by her brother-in-law. As to defendant's adult life,

the PSI stated that she was married twice and that both marriages involved domestic battery in which she was the victim. Defendant reported that she has three children and six grandchildren, and she has helped raise four of her grandchildren. The PSI indicated that defendant began using methamphetamine daily in 1998 but stopped in January 2000 while she was pregnant. Defendant reported that she did not use methamphetamine for a period of 18 years because she was "a soccer mom and grandmother." Defendant acknowledged that she began using methamphetamine daily again as her children got older because she "did not feel needed." The PSI provided that defendant had a history of physical and mental health issues, including hepatomegaly, hypocalcemia, hypothyroidism, iron deficiency anemia, vitamin D deficiency, asthma, attention-deficit disorder, bipolar disorder, and generalized anxiety disorder.

¶ 8       The trial court held a sentencing hearing on November 4, 2021. The court stated that it had received a handwritten letter from the defendant as well as the PSI. In the letter, defendant explained that, after being released and awaiting sentencing following her initial guilty plea, she was "determined to stay clean." Defendant stated that she was initially placed in the outpatient program of a drug rehabilitation facility, but after a relapse, she sought admission to the facility's inpatient program because it was more structured. Defendant reported that she would not be admitted, however, until she "took care of [her] health issues." Although defendant was eventually admitted, she was discharged after four or five days due to her medical issues.

¶ 9       The State argued that defendant had an extensive criminal history and, more significantly, engaged in criminal activity "in a very short period of time." The State highlighted that defendant "had a golden opportunity to address some issues" after she was released from custody in March 2021 and to "show the Court that she was on the right path," but she instead committed additional offenses. The State recommended (1) three years in prison for the retail theft

in case No. 20-CF-844, (2) seven years for delivery of methamphetamine in case No. 20-CF-865, (3) eight years for delivery of methamphetamine in case No. 21-CF-799, and (4) nine years for delivery of a controlled substance in case No. 21-CF-949. In response, defendant's counsel requested probation or, alternatively, the minimum term of six years' imprisonment, reflective of defendant's attempts to obtain treatment for herself.

¶ 10　　　　Defendant then gave a statement in allocution in which she stated she would like a chance to prove that she could overcome her addiction and mental health issues. Defendant stated that she took "total responsibility for [her] actions," and with the proper resources, she believed she could be a positive role model for her children.

¶ 11　　　　Thereafter, the trial court explained that it considered the PSI, defendant's letter, and "all the evidence in aggravation and mitigation." Additionally, the court stated that it considered all statutory factors in mitigation and aggravation. The court noted that defendant demonstrated that she did have the "potential to stay clean" and had done so "while raising [her] family." The court also described defendant's letter and statement in allocution as "very thoughtful." However, the court stated that defendant's record was "very troubling." The court explained that defendant had numerous prior felony offenses, misdemeanor offenses, and traffic offenses "that expand decades." Additionally, defendant committed some of the offenses she was being sentenced for while she was released on bond. The court acknowledged that defendant attempted treatment and worked hard to complete it. However, the court found that a community-based sentence "would deprecate the seriousness of these offenses and be inconsistent with the ends of justice." Additionally, the court believed that imprisonment was necessary for the protection of the public. Thus, the court sentenced defendant to imprisonment for (1) three years for retail theft in case No. 20-CF-844, (2) six years for delivery of methamphetamine in case No.

20-CF-865, concurrent with the sentence in case No. 20-CF-844, (3) six years for delivery of methamphetamine in case No. 21-CF-799, consecutive to the sentences in case Nos. 20-CF-844 and 20-CF-865, and (4) six years for delivery of a controlled substance in case No. 21-CF-929, concurrent with the sentence imposed in case No. 21-CF-799 but consecutive to the sentences imposed in case Nos. 20-CF-844 and 20-CF-865. In the aggregate, defendant was sentenced to 12 years in prison.

¶ 12　　　　The trial court denied defendant's subsequent motion to reconsider sentence, and this court remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Hamel*, No. 4-21-0734 (2022) (unpublished order). On remand, defendant's counsel filed compliant Rule 604(d) certificates and renewed defendant's motion for reconsideration. Counsel asked the court to consider sentencing defendant to probation or to a shorter prison sentence so that defendant could pursue rehabilitation. The State responded that the court considered applicable factors in aggravation and mitigation, so the sentence defendant received was appropriate. The court determined that it reviewed the PSI and all relevant factors in aggravation and mitigation. The court stated that it had considered, *inter alia*, that defendant had a lengthy criminal record, that defendant was being sentenced on additional felonies, and that a sentence of probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice. The court determined that based upon the factors it considered, it made the appropriate findings and imposed the appropriate sentence. Accordingly, the court denied defendant's motion to reconsider sentence.

¶ 13　　　　This appeal followed.

¶ 14　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　On appeal, defendant argues that her 12-year sentence is excessive.

¶ 16　　　　The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. The trial court's sentence must be premised upon the particular circumstances of the case, including the defendant's history, character, and rehabilitative potential; the seriousness of the offense; the need to protect society; and the need for punishment and deterrence. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 34. The trial court must consider aggravating factors such as a defendant's history of delinquency or criminal activity and the need to deter others from committing the same crime. *Klein*, 2022 IL App (4th) 200599, ¶ 34. Mitigating factors include where the defendant's criminal conduct neither caused nor threatened serious physical harm to another. *Klein*, 2022 IL App (4th) 200599, ¶ 34.

¶ 17　　　　A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge who has observed the defendant and the proceedings is in a much better position to consider factors like the defendant's credibility, demeanor, moral character, mentality, environments, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36. The weight to be given to a proper sentencing factor is left to the sound discretion of the trial court. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56. The appellate court will not substitute its judgment for that of the trial court merely because it would have weighed a sentencing factor differently. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. A sentence that is within the range authorized by statute is presumptively proper, and we may not disturb the sentence absent an abuse of discretion. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. An abuse of discretion occurs if the sentence is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 18    Here, defendant was sentenced on four counts: delivery of methamphetamine in case No. 20-CF-865, retail theft in case No. 20-CF-844, delivery of methamphetamine in case No. 21-CF-799, and delivery of a controlled substance in case No. 21-CF-929. The two delivery of methamphetamine counts and the delivery of a controlled substance count were Class 2 felonies (see 720 ILCS 646/55(a)(2)(A) (West 2020); 720 ILCS 570/401(d) (West 2020)), and the retail theft count was a Class 4 felony (see 720 ILCS 5/16-25(f)(1) (West 2020)). Defendant was eligible for extended-term sentencing (see 730 ILCS 5/5-8-2 (West 2020)). Accordingly, on the Class 2 felonies, defendant faced sentences of 7 to 14 years' imprisonment (730 ILCS 5/5-4.5-35(a) (West 2020)), and on the Class 4 felony, defendant faced a sentence of 3 to 6 years' imprisonment (730 ILCS 5/5-4.5-45(a) (West 2020)).

¶ 19    Defendant's aggregate 12-year prison sentence was statutorily authorized, and defendant does not contest this. Nevertheless, defendant argues that her rehabilitative potential and desire for positive life changes were mitigating factors that warranted a lesser sentence. Specifically, defendant argues that "a sentence closer to the minimum *** would be a more appropriate disposition" because (1) none of the offenses she committed were crimes of violence, (2) she would be a positive role model in her family, and (3) she showed remorse for her actions.

¶ 20    Defendant effectively asks this court to reweigh the factors the trial court considered and to place greater weight on the mitigating factors. However, as previously noted, we will not substitute our judgment for that of the trial court regarding how to weigh a sentencing factor merely because we would have weighed it differently. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 21    Here, the sentence was within the statutory range, and therefore, it was presumptively proper. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. The court explained that, in

determining defendant's sentence, it considered the PSI, defendant's letter, and all the evidence and statutory factors in aggravation and mitigation. The court acknowledged that defendant did have "some potential to stay clean" and demonstrated as much for "years while raising [her] family," despite having a troubled childhood. The court also acknowledged that defendant's letter to the court and statement in allocution, in which she accepted responsibility for her actions, were "very thoughtful." Even so, the court explained that defendant had a lengthy criminal record consisting of 57 traffic violations, 4 misdemeanors, and 5 felonies that went back decades, and the court found this criminal history to be "very troubling." The court determined that, given this history, and based on the evidence, a community-based sentence would deprecate the seriousness of the offenses for which she was being charged. The court was required to consider defendant's criminal history (*Klein*, 2022 IL App (4th) 200599, ¶ 34), and although defendant emphasizes that none of these offenses were violent, we will not disturb the court's determination of how much weight to attribute to this factor (*Musgrave*, 2019 IL App (4th) 170106, ¶ 56).

¶ 22        Nor will we disturb the trial court's determination that a 12-year sentence was necessary despite defendant's (1) capacity for rehabilitation, (2) ability to be a role model for her family, and (3) accepting responsibility for her actions. The court considered these mitigating factors, and despite appreciating defendant's rehabilitative potential, her capacity to be a productive member of her family, and her taking responsibility for her actions, the court found a 12-year sentence to be appropriate given defendant's criminal history and the need to protect the public. "A defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001). Nor does the existence of mitigating factors require the court to impose a more lenient sentence. *Pippen*, 324 Ill. App. 3d at 652. We do not find the court's imposition of a 12-year

sentence to be greatly at odds with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 23 Accordingly, we hold that the trial court did not abuse its discretion in sentencing defendant to an aggregate 12 years in prison.

¶ 24 III. CONCLUSION

¶ 25 For the reasons stated, we affirm the judgment of the trial court.

¶ 26 Affirmed.